UNITED STATES v. GARBISH.

(Circuit Court, E. D. Louisiana. June 27, 1910.)

No. 2,648.

MASTER AND SERVANT (§ 13*)—EIGHT-HOUR LAW—EMERGENCIES.

The building of levees on the banks of the Mississippi river in the Eastern district of Louisiana presents at all times an extraordinary emergency, exempted from operation of Eight-Hour Law Aug. 1, 1892, c. 352, 27 Stat. 340 (U. S. Comp. St. 1901, p. 2521).

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 13.*]

Herman Garbish, having been indicted for violating the eight-hour law of August 1, 1892, demurs to the indictment. Demurrer sustained.

Charlton R. Beattie, U. S. Atty.

Saunders, Dufour & Dufour, for defendant.

FOSTER, District Judge. In this case the defendant was indicted for an alleged violation of Act Aug. 1, 1892, c. 352, 27 Stat. 340 (U. S. Comp. St. 1901, p. 2521), known as the "Eight-Hour Law," and has interposed a general demurrer to the indictment, on the ground that it does not set forth an offense against the laws of the United States. The demurrer, of course, admits all the facts properly pleaded, but does not admit the correctness of either the inferences drawn from them by the pleader, or his conclusions of law.

Stripped of surplusage, the indictment charges that on August 17, 1908, the defendant, a contractor, was engaged in building certain public levees on the banks of the Mississippi river in the parish of St. James, La., and required and permitted the laborers employed by him, and engaged in the said work, to work more than eight hours in one calendar day. The indictment further sets up that during the months of August, September, October, November, and December the waters of the Mississippi river annually fall below the level of the surrounding land and are retained within its banks without the necessity of artificial levees; that the work was being done in the ordinary and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

usual course of levee building by the government of the United States, in preparation for the high waters that annually come down the river; that the existing levee was not of sufficient size and strength and did not comply with the government standard, and was being destroyed and replaced by the new, higher, and stronger levee; that nothing unusual or out of the ordinary had required the destruction of the old levee, or the building of the new levee; and that the contractor had the usual time to complete the levee, so as to allow it to settle and pack and become ready to withstand the next annual rise of the river.

The defendant rests his case on the proposition that the building of levees on the Mississippi river, in the Eastern district of Louisiana, at all times presents an extraordinary emergency; and hence that particular work is exempted from the operation of the law. This is denied by the government, and the indictment contains the general averment that no extraordinary emergency existed. The question thus squarely presented is decisive of the case, if defendant's contention be sustained.

The building of levees in Louisiana has at all times presented many problems. It is absolutely necessary, not only for the preservation of property and to permit the cultivation of the land, but to safeguard the very lives of the inhabitants as well, that levees should be built on the banks of the Mississippi river in this locality. Therefore it has always been usual that levee work proceed with the greatest dispatch, and the labor of the day has never been restricted to eight hours. In the nature of things, it is impossible to employ an unlimited number of men or teams in the building of levees, as, no matter how great a force the contractor may assemble, the work will not permit of crowding. It is necessary that levees be built in as short a time as possible, in order that they may settle as much as they can, and that the grass may become well rooted upon them, before they are called upon to bear the strain of a high river.

It is true that the months of August, September, October, November, and December are the most favorable for levee building, but there is no certainty that during any part of these months the river will maintain a low stage. When the river is bank full, necessarily no levees can be built. Statistics of the river's height, at New Orleans, show that during the past 25 years the river has been bank full on nearly every day of the year, and these statistics may well apply to the locality where the defendant was working. An unprecedented rain, or an early freeze followed by a thaw, anywhere in the valley of the Mississippi river or its tributaries, might unexpectedly cause the river to rise at New Orleans. No one can foresee or anticipate the acts of nature, and who can say that a few days' more time, in which it might have become solidified, would not have so materially added to the levee's strength as to enable it to withstand the pressure, and without which it might signally fail.

All of these facts are within the common knowledge of the people of this district, and, in connection with the specific allegations of fact in the indictment, overcome the mere conclusion of the pleader that no extraordinary emergency existed. The case presented here is not

that of a contractor trying to complete his job on schedule time, nor is it a question of expediency or the saving of expense. In my opinion, the building of levees on the banks of the Mississippi river in the Eastern district of Louisiana presents at all times an extraordinary emergency, within the meaning of the statute.

It may be that the indictment is otherwise demurrable, but I prefer to base my decision on the broad ground above set forth.

The demurrer will be sustained, and the defendant discharged.